Staples, J.
delivered the opinion of the court.
The main question before us is as to the effect of the order of the County court of Pittsylvania entered at the March term 1851, removing William Davis from his office of trustee, and appointing C. D. Bennett in his place. The learned judge of the Circuit court was of opinion that this order is illegal and void; and that the bond given by Bennett, for the faithful discharge of his duties as trustee, is also illegal and void as to his sureties; and although Bennett may be held to account for any funds received by him belonging to the •cestui que trusts, the sureties are in no wise responsible for the same.
The grounds of this decision are not given in the decree. They are no doubt correctly stated in the brief of the learned counsel for the appellee. This position is, that William Davis, after his acceptance of the trust, under the will of Thomas Davis, sen., could only divest himself of it in three ways—either by assent of all his cestui que trust; or, 2d, by means of some special power in the instrument creating the trust; and 3d, by an application to a court of chancery. That, in this case, neither of these conditions were complied with; that Mrs. Polly Shelton, the tenant for life, alone consented to the removal of Davis and the appointment of Bennett; the infant children, entitled to the estate in remainder, not being before the court, nor capable of consenting; that the will confessedly contains no provision on the subject; and, lastly, no proper application was made to a court of chancery; the order of March term 1851 being the first and only proceeding in the case; that order was *896 made simply upon motion, without process or bill, or other proceeding to give the court jurisdiction in the premises. Its action was therefore a nullity.
Xt is unnecessary to consider the two first grounds-of objection suggested by counsel; for if the court had no authority to act on the subject, if it was wholly without jurisdiction of the matter in controversy, both the order and bond must be regarded as invalid.
The question to be considered then is, first, as to the authority of the County court to act in the matter of removing and appointing trustees; and, second, how far its orders and decrees in such cases may be impeached in collateral proceedings.
At the time this order was entered, the County courts of Virginia were clothed with authority to hear and determine all cases at common law or in chancery within their respective counties and corporations, with the exception of certain criminal causes, and except civil cases not involving a greater amount or value than twenty dollars. Rev. Code 1860, page 663, see. 16-
In the exercise of their chancery powers these courts were concurrent with the Circuit courts. In other words they were courts of general jurisdiction, and were inferior only in the sense that their judgments might be revised by an appellate court. Harvey v. Tyler, 2 Wall. U. S. R. 328. They had therefore complete jurisdiction in cases of trusts. In the exercise of this branch of that jurisdiction they might remove and appoint trustees, whether acting under deeds or wills.
The appointment of new trustees is an ordinary remedy enforced by courts of equity in all cases where there is a failure of suitable trustees to perform the trusts, either from accident or from the refusal of the old trustees to act, or from their original or supervenient incapacity to act, or from any other cause. 2 *897 Story Eq. Jur. sec. 1287. And so where the circumstances or conduct of any existing trustee renders it inexpedient for him to continue in the office, the court will adapt its relief to the exigencies of the case, and having first decided upon the removal of the trustee, will proceed to supply the vacancy by appointing another person to act in the trust; and by directing the transfer of the property to him. Hill on Trustees 190, 191.
The County court of Pittsylvania being then at the date of that order, a court of general jurisdiction in the administration of trusts, its orders and decrees for the appointment or removal of trustees must be treated as valid in every other tribunal until reversed by a proper proceeding before an appellate court, or before the court which rendered the decree.
It is said, however, that jurisdiction of the subject matter is not sufficient; there must be parties and a case in court; and in the present instance the order was entered without process, or bill, or other proceeding.
The object of the process is to bring the defendant before the court; by it he is required to appear and answer the bill. But jurisdiction of the person may be acquired by the voluntary appearance of the defendant without process, or by an attorney appearing and making defence for him. If parties without process or bill appear in open court and agree that a decree may be entered adjudicating their rights, and this agreement is entered of record, it can hardly be maintained that such a decree is a mere nullity. This mode of proceeding may be very irregular, but the decree being the adjudication of the tribunal having jurisdiction of the subject matter and of the parties, can never be collaterally impeached for defect, *898 irregularity or error in the proceedings, however manifest or palpable it may be. In such ease the question of jurisdiction enters into and becomes an -essential paij 0f the judgment of the court.
This principle has again and again been affirmed by this court. The cases of Fisher v. Bassett, 9 Leigh 119; Cook, sheriff, v. Hays, 9 Gratt. 142; Andrews v. Avory, 14 Gratt. 229; and Gibson v. Beckham, 16 Gratt. 321; are familiar illustrations.
It is unnecessary to consume time in quoting from these decisions, as they are well understood'by the profession. In Gibson v. Beckham, Judge Allen entered into an exhaustive discussion of this whole doctrine, and a critical examination of all the authorities.
The rule as laid down in that case, is, that where a court has cognizance of the subject matter its judgment though it may be erroneous is not void; it is binding until set aside or reversed, and cannot be questioned incidentally; acts done and bonds taken under it bind the obligors and sureties as well as principals.
Where the court has cognizance of the subject matter, or capacity to take a bond, or takes a bond which on its face is valid, but contains a recital of facts necessary to its validity, the obligors shall be estopped from denying the truth of such recitals. These principles firmly established are essential to the security of the public and individuals. The security can occupy no higher ground than his principal. It is his intervention which has enabled the principal to act, and he should be bound to the extent of his obligation for him.
The argument of the counsel for the appellee seems to assume, that when a trustee is sought to be removed *899 by a court of equity a suit, or a bill, or some formal .pleading is essential to effect that object.
It will be found, however, that the practice of the Chancery courts in this respect, varies in different countries. In England the uniform course is to proceed by bill. The object is, no doubt, to give the defendant (the trustee) the benefit of his answer. The mode of proceeding is of course only important when the trustee is resisting the application for his removal.
In several of the American States the usual course is to proceed by petition. This practice has been recognized and sanctioned by the Supreme Court of Georgia as proper in that State. Mitchel v. Pilner, 15 Georgia R. 319.
In ex parte Knust, 1 Baily Eq. R. 489, the Supreme Court of South Carolina say—The English authorities certainly are, that to remove a trustee the proceeding must be by bill; and if it were right to remove a trustee for misconduct, I certainly should think he ought to have the means of defending himself by answer. The proceeding by petition is, however, more used by us than in the English practice, and if the office of trustee were vacant I think it might be filled upon petition. However this may be, it does not appear from the decree, that any objection to the form of the proceeding was taken at the hearing; nor does it form the ground of appeal. We think it is too late to take the objection now.
According to these cases, and others which could be cited, there is no fixed and unbending rule of proceeding in the equity courts for the removal of trustees. Whether in any of the states it may be done upon mere motion the books do not show. But if that mode of proceeding is adopted, with the consent of all the parties before the court, especially the trustee, *900 whose office is to be vacated, the decree rendered therein, until reversed, is entitled to the same respect as any other decree of a competent court. To hold otherwise, is to substitute the mode in which an authority is exercised for the authority itself. Departure from the regular course of proceeding can never invalidate an act if the court has authority to do the act. A decree based upon a motion or petition cannot be a nullity, if it would be valid when founded upon a regular bill in equity.
In the case before us, the application for the removal of the old trustee was made by Mrs. Shelton, one of the cestui que trusts in writing; and the trustee himself appeared in court and gave his consent. It would have been more regular to have proceeded by bill or by petition; but neither of those modes would have given the court jurisdiction of the parties more fully than was obtained by this voluntary appearance in open court.
It is very true that the children of Mrs. Shelton, who were entitled to the trust fund in remainder, were not parties to the proceeding. Whether these children could at any time have successfully objected to the order removing the old trustee, it is unnecessary now to decide. It has been nearly twenty-five years since that order was made. During all the time that has since elapsed, it does not appear to have been called in question by either of the children, although the youngest must have long since arrived at maturity. And now we are told that as they were not before the court, and might therefore have originally objected, these defendants who were before the court, and voluntarily assumed the obligation, are thereby released from all liability.-
The case of the People v. Morton, 5 Seld. (N. Y. R.) *901 176, furnishes so complete and satisfactory an answer to this view; indeed, it .is so apposite in every respect to the present case, as to justify an extended extract from the opinion of the court as delivered by Ruggles, C. J. “The court of chancery had general jurisdic tion of all cases of trust, and had the power by its general authority, independent of any statute, to displace a trustee on good cause shown, and to substitute another in his stead. It is said that this" must, in all cases, according to the course and practice of the court, be done by bill and not upon petition. But a departure from the usual practice of the court in doing an act, which the court has authority to do, does not render the act void. It may be irregular or erroneous, and upon a direct proceeding may be set aside or reversed ; but its validity cannot be questioned in a collateral action.
“It does not appear, that the court of Chancery in substituting Lynch as trustee in the place of White and Hicholl, acted, or professed to act, by authority of the statute in relation to trusts of real estate, or otherwise than by virtue of its general jurisdiction in matters of trust. The true point of the objection to the validity of the change of trustee seems to be this: that it does not appear by the recital in the bond that the cestui que trust were parties to or had notice of the proceeding.
“But this is an objection which neither the trustee nor Ms surety can be allowed to make. Lynch got possession of the trust estate under the proceeding by color of which he claimed to be trustee, and Horton voluntarily undertook as his surety, that he should faithfully administer the trust. If the proceeding was irregular for want of notice to the children of Mrs. Lynch, they might object to it in a proper manner for that cause; but Lynch after having obtained the pro *902 perty upon the pretence of being the trustee, cannot be permitted to deny the liability to account as such. The defendant who voluntarily became his surety in or<jer that he might take the trust property, is for a like reason precluded from denying his liability. The order for changing the trustee and the bond given in pursuance of it must therefore be regarded as valid, and the defences in the answer which related to this point were properly overruled.”
These views of Chief Justice Buggies are fully sustained by the case of Curtis v. Smith, 60 Barb. R. 12; the case of Pontis v. Dilby, 9 Gill’s R. 222, 240; the case of Budd v. Hiter, 8 Dutch. R. 43. And they are withal so satisfactory and convincing in themselves as-to render any further discussion of the subject wholly unnecessary.
Bor the reasons stated the decree of the Circuit court must be reversed, and the case remanded for further proceedings.
Decree reversed.